## CAUSE NO. D-206469

| | | |
|---|---|---|
| **KIRK THOMAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS.** | § | **OF JEFFERSON COUNTY, TEXAS** |
| | § | |
| **CITY OF PORT ARTHUR, TEXAS** | § | **136th JUDICIAL DISTRICT** |

## PLAINTIFF'S FIFTH AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, KIRK THOMAS, the Plaintiff, who files this Fifth Amended Petition. Plaintiff would respectfully show the Court as follows:

### DISCOVERY CONTROL PLAN AND AMOUNT OF RELIEF SOUGHT

1.    Plaintiff intends for discovery to be conducted under Level 3 of Texas Rules of Civil Procedure 190.  Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that it seeks non-monetary relief only.  This lawsuit is not an expedited action governed by Tex. R. Civ. P. 169.

### PARTIES

2.    Plaintiff, Kirk Thomas ("Thomas") is an individual who resides in Jefferson County, Texas.

3.    Defendant, the City of Port Arthur, Texas (the "City"), is a Texas local governmental entity that has entered an appearance in this lawsuit.  The City can be served with citation by serving its Chief Executive Office, which, pursuant to its City Charter, is the City Manager, Ronald Burton, who may be served at his office at 444 4th St., Port Arthur, Texas 77640.

4.    Flozelle Roberts is an individual and is the City's Director of Public Works. Roberts is sued in her official capacity only.  Roberts was substituted as a defendant in place of

the prior Director of Public Works, Alberto Elefano, so Defendant Roberts is considered to have made an appearance in this lawsuit.

## VENUE AND JURISDICTION

5.      Venue is proper in this County pursuant to Sections 15.002(1), (3) of the Texas Civil Practices and Remedies Code.

6.      The Court has jurisdiction over this matter, and Defendants are not entitled to have this case dismissed based upon governmental immunity, sovereign immunity, and/or official immunity.

## FACTS

### Plaintiff's Land and His Use of His Land

7.      Thomas owns real property in the City of Port Arthur, a portion of which property is only accessible by heavy commercial trucks via Sassine Avenue.  Thomas' property is a Texas Railroad Commission-permitted location for the proper and environmentally safe disposal of drilling mud, an operation commonly known as landfarming.  Drilling mud from multiple drilling or pipeline projects has been disposed of on Thomas' property.  Drilling mud from the installation of an Exxon pipeline was recently being delivered to Thomas' property before the unreasonable enforcement of city traffic ordinances on Sassine Avenue shut down Thomas' landfarm operation. Heavy trucks use Sassine Avenue, the only public access point to the permitted location, to deliver the drilling mud to Thomas' property.  Heavy trucks and other heavy equipment have been using Sassine Avenue to access Thomas's property, and other property, for years.

8.      Among the trucks using Sassine Avenue to enter Plaintiff's property are trucks engaged in an "oil and gas operation," and the landfarming on Plaintiff's property is an "oil and gas operation."  The applicable statute broadly defines an "oil and gas operation" as "an activity

associated with the exploration, development, production, processing, and transportation of oil and gas" including "drilling" and "disposal." Tex. Nat. Res. Code § 81.0523(a)(2). Given that oil and gas is regulated by the Texas Railroad Commission (the "RRC") and the Legislature intended a broad preemption of local regulation of oil and gas operations, any activity regulated by the RRC would fall within the scope of Section 81.0523. The term "oil and gas operation" therefore includes the hauling of oilfield and pipeline operations drilling mud by trucks using Sassine Avenue and the landfarming of the drilling mud on Plaintiff's property.

9.      The drilling mud delivered to Plaintiff's land is a by-product of drilling oil and gas wells and drilling tunnels for the installation of oil and gas pipelines. The drilling mud is classified as "oil and gas waste," which can only be hauled by a company licensed by the RRC to be an "oil and gas waste hauler."

10.      The RRC also regulates the landfarming of the drilling mud on Plaintiff's property. Landfarming is a process by which water-based drilling mud, drill cuttings, and other returns from drilling or tunneling are treated and disposed of through mixing those substances with the soil. As the drilling mud is not generated on Plaintiff's property, the oil and gas company or pipeline company conducting offsite operations must obtain a "Minor Permit" from the RRC District Office to landfarm the drilling mud on Plaintiff's property. These companies pay a substantial fee to Plaintiff for the landfarming. These companies are also licensed and regulated by the RRC.

11.      Thomas receives compensation from companies that landfarm drilling mud on his property. Plaintiff has a vested property right in the use and enjoyment of his land generally and specifically in receiving payment from oil and gas and pipeline companies for the legal disposal of drilling mud on his land. Defendants' conduct described herein unlawfully interferes with those vested property rights.

12.     Thomas also owns and operates KT Trucking and Cattle Company on his property abutting Sassine Avenue.  As part of his trucking and cattle company operations, Thomas owns his own commercial trucks to haul various materials when performing trucking jobs.  Thomas uses his own trucks to perform jobs hauling oil and gas equipment and supplies, (i.e. pipe, bulldozers, tractors, wooden mats) as well as agricultural equipment supplies and commodities (i.e. cattle, agricultural tractors, trackhoes, bulldozers, feed, and fencing supplies).  When his trucks are not in use they are parked, maintained, and stored on his property.

13.     Also, as part of KT Trucking and Cattle, Thomas uses commercial vehicles to transport cattle that are raised on his land on and off his property.  Sassine is the only viable access for Thomas to move his trucks and cattle on and off his property.

14.     Furthermore, there are multiple pipelines located on Thomas' property.  Pipeline companies send commercial vehicles hauling heavy equipment on and off Thomas' property in order to maintain these pipelines.  The pipeline companies have easements across the property and regularly enter to inspect, repair, replace, or build pipelines.  Sassine is the only viable access the Pipeline companies can use to maintain their pipelines on Thomas' property.

15.     Thomas' land is zoned for heavy industrial use.  According to the City of Port Arthur Zoning ordinance, land that is designated for heavy industrial use may be used as a terminal for transportation, for auto storage, commercial truck parking, storage or repair, general commercial use, neighborhood commercial use, contractor storage or equipment yard, and heavy machinery, among other things.  Thomas is attempting to use his land for heavy industrial uses zoned to him by the City yet he is being denied the *only* viable entrance for commercial vehicles. The land use chart provided by the City of Port Arthur Zoning ordinance specifically states that land zones for "heavy industrial use" may be used for things such as both general and

neighborhood commercial use, commercial truck parking, storage or repair, heavy machinery, commercial agricultural livestock, and petroleum or gas wells including storage and collecting facilities. All of these zoned-for uses would require commercial vehicles carrying heavy loads to routinely travel to and from Thomas' property.

16.     Thomas is running a landfarm operation and Trucking and Cattle company, and various pipeline companies maintain pipelines on his property. These operations, all within the accepted land use for heavy industrial zoned land, require commercial vehicles to have access to and from Thomas' property. The City's enforcement of the traffic ordinance that designates Sassine Avenue as a "no truck route" and requires Thomas to obtain a permit completely denies Thomas the heavy industrial use of his land and is (a) inapplicable as these commercial vehicles are engaged in routine commerce; and, (b) currently unreasonable as enforced . By designating Sassine Avenue a "no truck route" and prohibiting commercial vehicles from entering Thomas' property, the City has made it impossible for Thomas to use his land for its intended use.

17.     The Lower Neches Valley Authority ("LNVA") gave Thomas a canal crossing use agreement permitting him to build a small bridge ("the white bridge") over the LNVA canal onto his property for his own private use, however, the LNVA has prohibited Thomas from using that bridge for commercial vehicles due to safety reasons. The bridge Thomas built not only crosses the LNVA canal but also goes over the Union Pacific Railroad and a pipeline easement. The entrance onto Thomas' property on Sassine Avenue is the only viable entrance for commercial vehicles. Moreover, the safety issues associated with commercial vehicles attempting to cross the railroad tracks at West Port Arthur Road where Thomas' property is located has been acknowledged by the State. Warning signs have recently been placed on West Port Arthur Road to alert commercial motor vehicle drivers of the low ground clearance. Additionally, Thomas has

previously testified about these very safety issues he has encountered in the past when commercial vehicles attempted to enter his property via the white bridge by crossing the railroad tracks and going over the LNVA canal and either got stuck or overturned.

18.     Furthermore, pursuant to § 545.427 of the Texas Transportation Code, "an operator may not drive on or cross a railroad grade crossing unless the vehicle being operated has sufficient undercarriage clearance."  An offense under this section is a misdemeanor punishable by a fine of not less than fifty (50) or more than two hundred (200) dollars.  § 545.427 TEX. TRANSP. CODE. The commercial vehicles entering and leaving Thomas' property for landfarming and KT Trucking and Cattle operations do not have sufficient undercarriage clearance to cross the railroad tracks; therefore, they would be in violation of State law if they attempted to cross over the Union Pacific Railroad tracks and enter Thomas' property via the white bridge.   Thus, Sassine Avenue is the only viable access for commercial vehicles.

**City ordinance 106-41(b)(13) applies and Plaintiff does not need a permit.**

19.     Defendants' actions described herein were taken in response to City residents who complained about the commercial vehicles using Sassine Avenue.  State law would unquestionably prohibit the City from enacting an ordinance banning the hauling of drilling mud to Plaintiff's property or banning the disposal of that drilling mud on Plaintiff's property.  Instead, Defendants are illegally using traffic ordinances to accomplish the same goal.  Defendants have given the residents a power of veto over Plaintiff's use of his land in the manner which he has determined is the land's highest and best use, and which State law and agency regulation specifically authorizes to take place.

20.     Using inapplicable Ordinances, the City, acting through its Director of Public Works, demanded that trucks delivering drilling mud to Plaintiff's property cease using Sassine

Avenue without a road use permit. Historically, trucks have used Sassine to reach locations on Sassine or the cross street, Weaver. On or about January 15, 2020, Thomas received a letter from the City of Port Arthur advising Thomas that due to heavy truck traffic on Sassine Avenue (not all of which is due to trucks delivering mud to Plaintiff's property), Thomas is to cease and desist having heavy trucks use Sassine Avenue to access his property. The City based its position on Ordinances 106-7 and 106-8.

21.    The Ordinances relied upon by the City do not actually apply to trucks using Sassine to access Plaintiff's property. Ordinance 106-7(a) provides, "The chief of police, or his designee and the director of public works are authorized to determine and designate those streets upon which commercial vehicles exceeding 10,000 pounds may be prohibited from operating." Ordinance 106-8, entitled "Use of certain designated roadways by **construction companies**," (emphasis added) provides:

(a)  Notwithstanding the provisions of subsection 106-7(a), no person shall operate **construction equipment and vehicles** in excess of the legal load limits on streets other than those designated for commercial vehicles, except in accordance with following provisions: In connection with the following agreement, the applicant shall furnish at his expense a corporate surety performance bond, as set forth in the prescribed agreement, in an amount determined by the department of public works, based on the estimated cost to the city, at the time of the agreement, for materials, labor and equipment which would be reasonably necessary to reconstruct the particular roadway covered by the agreement, i.e., the city's prevailing contract cost of like materials, the city's prevailing salary costs and the city's prevailing schedule of operating costs and/or the prevailing rental costs of equipment. **Contractors** desiring to operate **construction equipment and heavy trucks** exceeding 10,000 pounds gross weight, but not to exceed 48,000 pounds gross weight or 18,000 pounds axle weight on streets other than designated truck routes, shall first make application with the director of public works, specifying the particular area of **construction** and the **time necessary to complete the work**. Upon receipt, the director of public works shall ascertain and designate the particular roadways capable of sustaining the excess load and **the duration**, and thereafter cause to be executed an agreement between the contractor and the city.

(b)  Any person who violates any provision of this section, or who shall fail or neglect to comply with the terms of this section, shall be deemed guilty of a misdemeanor and

shall, upon conviction, be fined not less than $100.00, nor more than $200.00.*Port Arthur City Ordinance 106-8* (emphasis added).

22.    On its face, Ordinance 106-8 does not apply to traffic other than construction traffic which by its very nature is temporary and non-routine.  In addition, Ordinance 106-41(b)(13) expressly limits the power of the Public Works department to enforce 106-7 and 106-8 and offers an exception to the enforcement of Ordinance 106-7(a), and shows that 106-8 does not apply to trucks traveling to Plaintiff's land.  Ordinance 106-41(b)(13) provides:

(b) Whenever and wherever the congestion of traffic, the dimensions of the streets and sidewalks,  and the use of property abutting the streets are such that the department of public works finds it to be necessary for the free flow and the expeditious handling of traffic and the safety of persons and property, the department of public works is authorized, after consulting with the police department to:

***

(13) In conjunction with the chief of police, designate the routes along the streets of the city which must be followed by **commercial vehicles engaged in steady hauling of material of any kind or** which are **carrying** unusually long or **heavy loads**. No such vehicles **shall be prohibited from using any street for the purpose of going directly to or from any residential, commercial or industrial establishment abutting on such street for purposes of routine commerce**, provided that they enter such street at the closest intersection to their destination and proceeding no farther than the next intersection in order to return to their point of entry. *Port Arthur City Ordinance 106-41(b)(13)* (emphasis added).

23.    Thus, the City made an exception for commercial vehicles hauling material or unusually long or heavy loads operating in routine commerce whose destination is abutting a street not approved for commercial vehicle use as long as the vehicle is entering at the closest intersection to their destination and proceeds no farther than the next intersection in order to return to their point of entry.  Trucks coming to and from Thomas' property, which abuts Sassine Avenue, are commercial vehicles engaged in the steady hauling of material and/or carrying heavy loads. These vehicles use Sassine street for the sole purpose of going directly to and from a commercial or

industrial establishment (Thomas' property where his landfarm operation is located) for matters of routine commerce.

24.     Statutory construction depends on the plain meaning of the statute's language.  To determine plain meaning, the Courts read statute in context and give effect to each word, phrase, clause and sentence if reasonably possible, and construe them according to any applicable technical definitions and otherwise according to the rules of grammar and common usage.  Under the plain meaning rule for statutory interpretation, the court may consult standard dictionaries in determining the fair, objective meaning of undefined statutes.  The City of Port Arthur Ordinances do not define "routine commerce" in their definitions in § 106-1.  Therefore, the Court can interpret the statute based on the plain meaning of the statute's language.

25.     Commerce is defined in the Merriam webster dictionary as "the exchange or buying and selling of goods, commodities, property or services especially on a large-scale involving transportation from place to place.  Routine is defined in the Merriam Webster Dictionary as "a regular course of procedure."  Therefore, what is routine for your business depends on what type of business you are in.

26.     Additionally, in the State of Texas, thousands of waste hauling permits are issued every year by the Texas Railroad Commission (RRC) for trucking companies to haul drilling mud off drilling sites and deliver it to landfarms.  Specifically, the RRC has issued 9,769 waste hauler permits this year alone according to their website.  This means there are thousands of commercial vehicles across the State of Texas hauling drilling mud every single day.  According to the "State of Energy Report" issued by the Texas Independent Producers & Royalty Owners Association, Texas is leading the United States in oil and gas production and was the top oil and gas producer in America in 2022 and is expected to continue expanding in 2023.  Thus, the service of

transporting drilling mud to be disposed of at landfarm sites is routine commerce in the State of Texas.

27.    As further evidence of the routine nature of hauling drilling mud in Texas, it is not unusual for Thomas to have only a few days' notice when a drilling or trucking company contacts him wanting to haul drilling mud to his landfarm operation.  These jobs last anywhere from just a few days to a few weeks with sometimes very short notice making the City's long unreasonable process of trying to obtain a permit to use the Sassine Avenue entrance difficult to comply with. Thus, the frequent, repeated nature of drilling mud being delivered to Thomas' property by commercial vehicles hauling drilling mud out of drilling sites daily is routine commerce.

28.    Sassine Avenue is the only viable access into Thomas' property for commercial vehicles and is the exact type of circumstances for which 106-41(b)(13) makes exception.  Port Arthur City ordinance 106-41(b)(13) is applicable here; therefore, the "no truck route" designation cannot be enforced on Sassine and Thomas is not required to obtain a permit for commercial vehicles to use Sassine.

**The City's enforcement of 106-8 and their permitting process is commercially unreasonable.**

29.    Even if Ordinances 106-7 and 106-8 apply, which they do not, the City is enforcing them in a manner that is commercially unreasonable and effectively prohibits landfarming on Plaintiff's land.  Enforcing a weight limit of 48,000 pounds is also commercially unreasonable and/or effectively prohibits landfarming on Plaintiff's land.  Trucks used in oil and gas operations weigh more than 48,000 pounds.  Indeed, the City's own ordinance governing oil and gas drilling and production envisions the use of trucks weighing more than 48,000 pounds.  Port Arthur Ordinance 66-22(c).  It is not commercially reasonable to permit tanker trucks used in oil and gas drilling and production to weigh more than 48,000 while simultaneously limiting those same trucks

to not more than 48,000 pounds when they are being used to dispose of waste generated during drilling and production activities.

30.    On January 15, 2020, Thomas received a cease-and-desist letter from the City. Thomas then went to the City to see what he needed to do to obtain a permit so commercial vehicles could continue using Sassine Avenue to haul drilling mud to his landfarm operation. Thomas was given the Port Arthur Commercial Use of Roadway Policy with an effective date of January 28, 2020.  Thomas submitted the required documentation at that time.  In a hearing held in this Court in 2021, Thomas testified that he then received a temporary permit from the City for a ten (10) day period to complete the job he was doing with Exxon Mobil after having submitted the required documentation to the City.  Shortly thereafter the City made a claim against the bond Thomas had provided.  When Thomas further inquired what he would need to do to get a permit to use Sassine for additional jobs, he was told that he would need to get the neighbors to agree to allow him to use Sassine for commercial vehicles to haul drilling mud to his landfarm operation and was given a list of the neighbors and their addresses for him to personally contact.  Notably, only a few of the neighbors on the City's list actually live on Sassine as there are only <u>three</u> houses on Sassine Avenue.

31.    The parties appeared before this Court on March 28, 2023, after Plaintiff sought a temporary restraining order against Defendants' conduct.  The Court declined to issue a temporary restraining order, but the Court instructed the parties to work together on a permitting process and application.  The Court inquired as to when Plaintiff could submit an application to the City, and Plaintiff's counsel responded it could be done in seven days.  It appeared everyone would stand down while engaging in the cooperative process described by the Court.

32.     Rather than working with Plaintiff, the City began ticketing trucks on Sassine before Plaintiff even had a chance to submit an application.  On or about March 30 and 31, 2023, the City, acting through its police officers, issued citations to the drivers of trucks using Sassine Avenue to deliver drilling mud to Plaintiff's property.  The City claims that a permit is required under Ordinance 106-8.

33.     Plaintiff submitted a permit application on March 30, 2023.  The City's Director of Public Works, Flozelle Roberts, rejected Plaintiff's application one day after it was submitted.  On May 16, 2023, more than thirty (30) days after Thomas submitted his application for a permit and after his landfarm operation had already been shut down, the City finally responded to Thomas's application for a road use permit for vehicles owned by Bryant Oilfield Resources LLC ("BOR") and Hook Set Transportation, LLC ("HST").  Regarding the BOR vehicles the City stated, "the total weight of the per-vehicle drilling mud exceeds the maximum allowable weight of 48,000 pounds listed in Section 106-8 of the City of Port Arthur Code of Ordinances."  Further, the City responded that they would authorize a permit (subject to Thomas' execution of a roadway use agreement and the providing of a bond) to HST because their weight fell within the load limits authorized by Section 106-8.  The City stated that "a permit authorizing the use of the 8800 to 8900 blocks of Sassine Avenue for Hook Set vehicles will be issued subject to Thomas' execution of a roadway use agreement and the provision of a bond in an amount to be determined in the event roadway repairs are necessary."  Additionally, a permit for the BOR trucks could be issued if the weight per axle was no greater than 18,000 pounds per axle.  Moreover, this permit would be limited to 31 (thirty-one) days with a time restriction of 7 a.m. to 7 p.m. Monday through Friday.

34.     The City's permit requirements are commercially unreasonable and problematic for many reasons.  First, 106-41(13) is applicable, therefore, 106-8 does not apply and Thomas is not

required to obtain a permit to use Sassine since it is his only access for routine commerce consistent with the property's zoned-for uses.  Second, the permit only authorizes the use of the 8800 to 8900 blocks of Sassine.  The first two blocks on Sassine street are **not** a "no truck route" and can be  used by commercial vehicle use without a permit.  Thus, the City will allow commercial vehicles to drive down the first two blocks of Sassine but then requires them to obtain a permit to continue down the second half of the same street.   This begs this questions: How would a commercial vehicle that can legally drive down the first two blocks of Sassine ever be able to legally turn around if the second half of the street (blocks 8800 and 8900) is designated as a "no truck route"?  Such enforcement defies all reasonable logic and common sense.  To enforce traffic ordinance 106-8 in a way that makes half the street a through street for commercial vehicles but the other half a no truck route with no method or means for a commercial vehicle to turn around to leave after they have entered is commercially unreasonable.

35.    Moreover, the City's response allows for Thomas to obtain a permit for HST vehicles "subject to Thomas' execution of a roadway use agreement and the provision of a bond in an amount to be determined…"  The City took thirty-six (36) days to respond to the permit application Thomas submitted on April 11, 2023.  Yet, as of the date of filing this petition Thomas still does not have a permit; he merely has the approval of the permit application for HST only subject to Thomas' execution of a roadway use agreement.  The City previously stated that a proposed roadway use agreement had to be approved by the city council, a process that could take several weeks due to having to prepare the agenda items and the city council meeting only every other week.  On May 17, 2023, the City sent a proposed roadway use agreement requesting that Thomas red-line the agreement and submit his suggested changes.  That agreement was equally unreasonable and problematic and Thomas is working to get his suggested changes submitted to the City as soon as possible. It is clear

that the process of finalizing an agreeable road use agreement with the City will take some time, further delaying the permit process.  (It is worth noting that under federal statute 658.19(h)(ii) a permit for road access is automatically approved if the request is not acted upon in 90 days of receipt by the State.)

36.    Additionally, the permit application was approved for HST subject to Thomas' providing a bond in an amount that is yet to be determined.  It is unreasonable to ask Thomas' to agree to post a bond of an undetermined amount.  There is no way for Thomas to account for the cost of a bond in his business when he has no idea how much said bond will cost.

37.    Thomas' job with BOR and HST ended before a permit could be obtained. Specifically, the job ended before a road use agreement could be agreed upon and presented to the City council for approval.  When drilling and trucking companies want to dispose of drilling mud on Thomas' landfarm it is not unusual for Thomas to sometimes have only a few days or few weeks' notice.   Thus, the City's lengthy unreasonable process to obtain a permit is commercially unreasonable.

38.    Finally, the maximum allowable weight limit of 48,000 pounds listed in ordinance 106-8 is in violation of Federal statute 49 U.S.C.A. § 31114(a) as it denies all access for vehicles weighing up to 80,000 pounds.  The City's response to Thomas' permit application for BOR trucks stated, "disregarding the vehicles weight, the total weight of the per-vehicle drilling mud exceeds the maximum allowable weight of 48,000 pounds listed in section 106-8…"  Port Arthur City Ordinance 106-8 states, in part:

> Contractors…desiring to operate…heavy trucks exceeding 10,000 pounds gross weight, but not to exceed 48,000 pounds gross weight or 18,000 pounds axle weight on streets other than designated truck routes, shall first make an application with the director of public works.

39.    Ordinance 106-8 is commercially unreasonable and unenforceable on its face because it conflicts with federal statute § 31114(a) and § 31114(e) and is preempted by the Surface Transportation Assistance Act ("STAA") and 23 C.F.R. § 658.19 and § 658.17.  Pursuant to the Federal Highway Administration, the maximum gross vehicle weight shall be 80,000 pounds except where lower gross vehicle weight is dictated by the bridge formula.  23 C.F.R. § 658.17(b).  Thus, not having a permit application for vehicles up to 80,000 pounds is commercially unreasonable and in violation of federal law.

**Defendants' Conduct Violates Tex. Nat. Res. Code § 81.0523**

40.    The Texas Legislature passed HB 40 during the 2015 Regular Session in response to numerous attempts by some cities and counties to regulate or prohibit oil and gas operations. Tex. Nat. Res. Code § 81.0523 was enacted to stop cities or counties from using ordinances that either expressly or effectively ban, limit, or regulate oil and gas operations.

41.    Section 81.0523 of the Texas Natural Resources Code prohibits cities and counties from enacting or enforcing ordinances that directly or indirectly prohibit oil and gas operations. Subsection (b) of Tex. Nat. Res. Code § 81.0523 provides:

> An oil and gas operation is subject to the **exclusive jurisdiction** of this state. Except as provided by Subsection (c), a municipality or other political subdivision may not enact or enforce an ordinance or other measure, or an amendment or revision of an ordinance or other measure, that **bans, limits, or otherwise regulates** an oil and gas operation within the boundaries or extraterritorial jurisdiction of the municipality or political subdivision. (Emphasis added.)

42.    Although Section 81.0523 expressly preempts "the authority of a municipality ... to regulate an oil and gas operation," it contains a limited carve-out permitting municipalities to "regulat[e] only aboveground activity related to an oil and gas operation that occurs at or above the surface of the ground, including a regulation governing fire and emergency response, traffic, lights, or noise, or imposing notice or reasonable setback requirements." § 81.0523(c). Any such

local regulations addressing "aboveground activity" must (x) be "commercially reasonable" and (y) cannot "effectively prohibit an oil and gas operation conducted by a reasonably prudent operator." *Id.* The City has violated Section 81.0523 by enforcing the Ordinances in a manner that is both commercially unreasonable and that effectively prohibits delivery of drilling mud to Plaintiff's land for landfarming of the mud.

43.    The City's enforcement of Ordinances 106-7 and 106-8 is commercially unreasonable and effectively prohibits those oil and gas operations. The City has attempted to use the Ordinances to stop trucks going to and from Plaintiff's property from using Sassine, which effectively prohibits the hauling of drilling mud to Plaintiff's land. By stopping the mud from being delivered to Plaintiff's land, the City has stopped the landfarming operations. Tex. Nat. Res. Code Sec. 81.0523 would unquestionably stop the City from enacting ordinances prohibiting the hauling of drilling mud in the City or landfarming in the City. The City cannot use its traffic ordinances to accomplish, indirectly, something Section 81.0523 bars it from doing directly, all to appease the two or three residents who own houses on Sassine.

44.    The City's enforcement of the Ordinances is not protected by the exception provided for in Section 81.0523(c). Enacting or enforcing an ordinance governing above-ground activity is permissible only if it is both commercially reasonable and does not effectively prohibit oil and gas operations. Section 81.0523(c). An ordinance is commercially reasonable if it "would allow a reasonably prudent operator to fully, effectively, and economically exploit, develop, produce, process, and transport oil and gas." Section 81.0523(a)(1). The way the City has enforced the Ordinances is not commercially reasonable and effectively prohibits RRC-regulated oil and gas operations on Plaintiff's property. Therefore, the City's enforcement of these

Ordinances in this manner is not protected by Section 81.0523(c) and directly violates Section 81.0523(b).

45. Defendants' actions described herein were taken in response to City residents who complained about the commercial trucks using the Sassine Avenue entrance onto Thomas' property. State law would unquestionably prohibit the City from enacting an ordinance banning the hauling of drilling mud to Plaintiff's property or banning the disposal of that drilling mud on Plaintiff's property. Thus, defendants are being commercially unreasonable in their enforcement of the "no truck route" traffic ordinance on Sassine Avenue.

**Defendants' conduct violates federal statute § 31114 and federal regulation § 658.19(a).**

46. City ordinances 106-7 and 106-8 are preempted by federal law pursuant to the Supremacy Clause of Article VI of the Constitution and are unenforceable. The Supremacy Clause of the United States Constitution prohibits states from enacting or enforcing any laws contrary to the laws of the United States. The federal law at issue is governed by the Surface Transportation Assistance Act ("STAA"). The STAA governs, among other things, access to and from the national interstate system. 49 U.S.C. § 31114. The relevant text of the statute provides:

(a) <u>Prohibition on denying access</u>. **A State may not enact or enforce a law denying to a commercial motor vehicle** subject to this subchapter or subchapter 1 of this chapter **reasonable access between** –

1) The Dwight D. Eisenhower System of Interstate and Defense **Highways**…; **and**

2) **Terminals**, facilities for food, fuel, repairs, and rest, and **points of loading and unloading** for household goods carriers, motor carriers of passengers, or any tractor-semitrailer combination…

47. The STAA statutory definition of "commercial motor vehicle" is "a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo,

if the vehicle (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31101(1)(A).

48.    A "terminal" under § 31114(a)(2) has been defined by the Federal Highway Administration as meaning, "at a minimum, any location where: (1) freight either originates, terminates, or is handled in the transportation process; or (2) commercial motor carriers maintain operating facilities.  See 23 C.F.R. § 658.5.

49.    Likewise, under the Federal Highway Administration ("FHWA"), 23 C.F.R. § 658.19(a) states in part, "no State may enact or enforce any law denying reasonable access to vehicles with dimensions authorized by the STAA between the National Network ("NN") and terminals…In addition, no State may enact or enforce any law denying reasonable access between the NN and points of loading and unloading to household good carriers, motor carriers of passengers, and any truck tractor-semitrailer combination…" 23 C.F.R. § 658.19(a).

50.    Further, under 23 C.F.R. § 658.19(d), "no state may enact or enforce any law denying access within 1 road mile from the National Network using the most reasonable and practicable route available except for **specific safety reasons** on individual routes."  23 C.F.R. § 658.19(d) (emphasis added).

51.    Thomas' maintains the operating facilities for both his landfarm operation and KT Trucking and Cattle Co. on his property.  In addition, his property is the point of unloading drilling mud in his landfarm operation and often the point of loading and unloading for his trucking and cattle company.  Based on federal statute § 31114 and federal regulation § 658.19, a State may not enforce a law that denies commercial vehicles reasonable access from the Highway system to operating facilities and points of loading and unloading.  In addition, based on 23 C.F.R. 658.19(d), no State may enact or enforce any law denying access within one road mile from the National

Network of Highways using the most reasonable and practicable route available except for specific safety reasons on individual routes. Enforcing ordinances 106-7 and 106-8 on Sassine Avenue and designating it a "no truck route" denies commercial vehicles *all access* to and from the highway system and Thomas' operating facilities and their points of loading and unloading. Federal Courts have held that *denial of all access is not reasonable access*.

52.    Furthermore, the local weight restriction in City ordinance 106-8 is preempted by the STAA and conflicts with § 31114(a) and § 658.19 and § 658.17(d). The City's permit application process does not allow a permit application for loaded commercial vehicles weighing up to 80,000 pounds. Instead the City offers a potential permit for loaded commercial vehicles weighing up to 48,000 pounds, thereby restricting *all access* to commercial vehicles weighing up to 80,000 pounds. Notably, federal funding can be withheld from States who do not permit the use of the Dwight D. Eisenhower System of Interstate and Defense Highways within its boundaries by vehicles with a gross weight of at least 80,000 pounds for vehicle combinations of five axles or more. 23 U.S.C.A. § 127(1).

53.    The enforcement of City ordinances 106-7 and 106-8 on Sassine Avenue is in conflict with and preempted by both State and Federal law and is commercially unreasonable.

**CAUSE OF ACTION ONE: DECLARATORY JUDGMENT AGAINST THE CITY OF PORT ARTHUR BECAUSES ORDINANCE 106-41(13)(b) IS APPLICABLE.**

54.    Plaintiff incorporates by reference the foregoing allegations of this Petition.

55.    There is an actual dispute between the parties as to whether Port Arthur City ordinance 106-8  or 106-41(b)(13) applies and whether Plaintiff is required to obtain a permit for commercial vehicles to use Sassine Avenue to enter Plaintiff's property. There is also a dispute between the parties as to whether Port Arthur City ordinance 106-7 and 106-8 are preempted by

State and Federal laws, and whether the City's enforcement of these ordinances is commercially unreasonable.

56.    Pursuant to the Texas Uniform Declaratory Judgments Act, Plaintiff asks the Court to declare that: Port Arthur City ordinance 106-41(b)(13) is applicable here and 106-8 does not apply and is unenforceable, therefore, commercial vehicles used in routine commerce can travel on Sassine Avenue to enter and exit Plaintiff's property without a permit.

**CAUSE OF ACTION TWO: DECLARATORY JUDGMENT AGAINST THE CITY OF PORT ARTHUR FOR THE COMMERCIALLY UNREASONABLE ENFORCMENT OF CITY ORDINANCES IN VIOLATION OF STATE LAW**

57.    Plaintiff repeats and incorporates by reference and re-alleges each of the foregoing paragraphs as if the same had been set forth herein verbatim.

58.    Pursuant to the Texas Uniform Declaratory Judgments Act, Plaintiff asks the Court to declare that: a) the manner in which the City and its agents are enforcing or seeking to enforce the Ordinances is invalid, unlawful, and commercially unreasonable; and b) the enforcement of City ordinances 106-7 and 106-8 is commercially unreasonable because it is in violation of State law 81.0523 in the Texas Natural Resources Code and the Texas Constitution.

59.    Under Section 37.004 of the Texas Civil Practice and Remedies Code, "a person... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

60.    A justiciable controversy exists between Plaintiff and the City concerning the Ordinances and Section 81.0523 of the Texas Natural Resources Code. Plaintiff's rights, status, and other legal relations are affected by the Ordinances and its compliance with the Texas Natural

Resources Code. Plaintiff asks this Court to determine questions of construction and validity of the Ordinances and to issue a declaration of rights, status, and other legal relations. Tex. Civ. Prac. & Rem. Code § 37.004.

61.    The Texas Constitution prohibits home-rule cities from enacting ordinances that are inconsistent with or prohibited by state statutes. See Tex. Const., art. XI, § 5. Section 81.0523 of the Texas Natural Resources Code expressly preempts municipalities' authority to regulate oil and gas operations and only permits municipalities to issue and enforce limited, "commercially reasonable" regulations concerning "aboveground activity." Tex. Nat. Res. Code § 81.0523(c). The Ordinance is preempted by (and conflicts with) state law to the extent it is interpreted by the City to give the City of Port Arthur absolute discretion to: a) prohibit trucks hauling mud generated by Plaintiff's drilling operations to the Disposal Location from using Sassine Avenue, b) imposing application, permit, or agreement requirements that are commercially unreasonable and effectively prohibit oil and gas operations.

62.    Plaintiff seeks a declaration that Port Arthur City ordinances 106-7 and 106-8 are being enforced in a manner that is commercially unreasonable and is preempted by and in conflict with State law, therefore, the ordinances are unenforceable.  Thus, the City cannot designate Sassine Avenue a "no truck route," and Plaintiff does not need a permit for commercial vehicles hauling drilling mud to enter his property via Sassine Avenue.

### CAUSE OF ACTION THREE: DECLARATORY JUDGMENT AGAINST THE CITY OF PORT ARTHUR BECAUSE CITY ORDINANCES 106-7 AND 106-8 ARE PREEMPTED BY AND VIOLATE FEDERAL LAW

63.    Plaintiff incorporates by reference the foregoing allegations of this Petition.

64.    There is an actual dispute between the parties as to whether Port Arthur City ordinance 106-8 or 106-41(b)(13) applies and whether Plaintiff is required to obtain a permit for

commercial vehicles to use Sassine Avenue to enter Plaintiff's property.  There is also a dispute between the parties as to whether Port Arthur City ordinance 106-7 and 106-8 are preempted by State and Federal laws, and whether the City's enforcement of these ordinances is commercially unreasonable.

65.     Pursuant to the Texas Uniform Declaratory Judgments Act, Plaintiff asks the Court to declare that: Port Arthur City ordinance 106-7 and 106-8 are in violation of and preempted by federal laws U.S.C. § 31114(a) and 23 C.F.R. § 658.19 and are unenforceable, therefore, Plaintiff is not required to obtain a permit for commercial vehicles to use Sassine Avenue to enter his property.

## CAUSE OF ACTION FOUR: DECLARATORY JUDGMENT AND ULTRA VIRES ACTION AGAINST FLOZELLE ROBERTS IN HER OFFICIAL CAPACITY AS DIRECTOR OF PUBLIC WORKS

66.     Plaintiff repeats and incorporates by reference and re-alleges each of the foregoing paragraphs as if the same had been set forth herein verbatim.

67.     Pursuant to the Texas Uniform Declaratory Judgments Act, Plaintiff asks the Court to declare that: a) Roberts's interpretation and enforcement of the Ordinances in the manner described herein was an *ultra vires* act, b) the manner in which Roberts is interpreting, enforcing, or seeking to enforce the Ordinances is invalid and unlawful, in relevant part, by operation of the Texas Natural Resources Code and the Texas Constitution, c) Roberts may not interpret, enforce, or attempt to enforce the Ordinances in a manner that is invalid.

68.     The *ultra vires* exception to governmental immunity allows private parties to bring declaratory-judgment suits against municipal officials in their official capacities when the officials have acted without legal authority.

69.    The Director of Public Works does not have "absolute discretion" to refuse to allow Plaintiff and Plaintiff's customers to operate heavy trucks on Sassine Avenue and impose unreasonable conditions to obtain a permit or agreement.  The Director of Public Works did not have and does not have discretion to enforce the Ordinances in the manner described herein against Plaintiff and Plaintiff's customers. The Director of Public Works does not have the power or discretion to enforce an Ordinance that is inapplicable to trucks delivering drilling mud to Plaintiff's land.  Alternatively, if 106-7 and 106-8 do apply to trucks delivering drilling mud to Plaintiff's land, the Director of Public Works is required enforce those Ordinances in a commercially reasonable manner that does not effectively prohibit landfarming on Plaintiff's property.  The Director of Public Works acted and continues to act without reference to or in conflict with the constraints placed on her discretion by the local law authorizing her to act.

70.    The Director of Public Works' unlawful conduct also violated the constraints placed on her authority by state law.  The Director of Public Works appears to believe she has absolute discretion in this matter, perhaps under the City's police power—regardless of the provisions of the Ordinances. However, Section 81.0523 of the Texas Natural Resources Code expressly preempts municipalities' authority to regulate oil and gas operations and only permits municipalities to issue and enforce limited, "commercially reasonable" regulations concerning "aboveground activity." Tex. Nat. Res. Code § 81.0523(c). Thus, by acting with unfettered and illegal discretion, the Director of Public Works' actions were *ultra vires*. Her attempt to exercise such discretion would amount to an effort to enforce an ordinance in a manner that is pre-empted by state law.

## ATTORNEYS' FEES

71.    Plaintiff has retained the undersigned counsel to prosecute this suit on his behalf and has agreed to pay counsel reasonable and necessary attorneys' fees. An award of attorneys' fees to Plaintiff on his declaratory judgment claims would be equitable and just, and Plaintiff requests that attorneys' fees be awarded pursuant to Section 37.009 of the Texas Civil Practices & Remedies Code. The Uniform Declaratory Judgments Act waives governmental immunity for attorneys' fees in suits to construe legislative pronouncements. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ask that Defendant be cited to appear and answer and that the Court declare Plaintiff does not need a permit for commercial vehicles to enter and exit his property via Sassine Avenue since he is engaged in routine commerce and Port Arthur City ordinances 106-7 and 106-8 cannot be enforced on Sassine Avenue as they are preempted by Federal law.  Thus, a "no truck route" cannot be enforced by the City on Sassine Avenue. In addition, Plaintiff asks for the following damages:

a.    Prejudgment and post judgment interest;

b.    Court costs;

c.    Attorney fees reasonably incurred in bringing this action;

d.    All other relief to which Plaintiffs is entitled.


Respectfully submitted,


By: /s/ *Lindsey Scott*
Lindsey Scott
LAW OFFICE OF LINDSEY SCOTT

Texas Bar No. 24054362
2809 Hwy 69 North
Nederland, Texas 77627
Telephone: 409-720-9613
Facsimile: 409-727-1239
Email: Lindsey@lindseyscottlaw.net

AND

THE FERGUSON LAW FIRM, LLP
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700
(409) 832-9708 – fax
Jane S. Leger
State Bar No. 00788814
jleger@thefergusonlawfirm.com

SANDERS PLLC
5850 San Felipe St. Suite 500
Houston, TX 77057
Telephone: 713-493-7547
Facsimile:  713-347-9569
Michael Sanders
State Bar No. 24007981
Email for service: eservice@sandersfirm.law
Email for correspondence: mcs@sandersfirm.law

**ATTORNEYS FOR PLAINTIFF,
KIRK THOMAS**

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument has been served upon all record counsel by the E-filing system and also by the following method under TRCP 21 and 21a, on _____:

CITY OF PORT ARTHUR
Valecia R. Tizeno
City Attorney
Texas Bar No. 24004954
444 4th Street
P.O. Box 1089
Port Arthur, TX 77641-1089
(409) 983-8126
Fax: (409) 983-8124
Method of Service:
Val.tizeno@portarthurtx.gov

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
Gunner P. Seaquist
Texas Bar No. 24043358
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Tx 78746
(512) 472-8021
Fax: (512) 320-5638
Method of Service:
gseaquist@bickerstaff.com

Joseph Sanders
Senior Assistant City Attorney
Texas Bar No. 17595250
Method of Service:
Joseph.sanders@portarthurtx.gov

Sherry Phelps Vital
Assistant City Attorney
Texas Bar No: 24068880
Method of Service:
Sherry.vital@portarthurtx.gov

**/s/ Lindsey Scott**
Lindsey Scott

## VERIFICATION
## TEXAS CIVIL PRACTICE & REMEDIES CODE SEC. 132.001

My name is Kirk Thomas. My date of birth is July 23, 1979. My address is 9240 West Port Arthur Road, Port Arthur, Texas 77642. This Verification is an unsworn declaration made under penalty of perjury pursuant to Tex. Civ. Prac. & Rem. Code Sec. 132.001. I declare under penalty of perjury that the following is true and correct:

I am the Plaintiff in this lawsuit. I have read the foregoing Plaintiff's Motion for Partial Summary Judgment. The facts stated therein are within my knowledge, except where stated based upon information provided by others, and are true and correct.

Executed this __21st__ day of June 2023 in __Jefferson__ County, Texas.

_____
Kirk Thomas