| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

KIRK THOMAS and KT TRUCKING §
AND CATTLE LLC, §
§
       Plaintiffs, §
§
*versus* § CIVIL ACTION NO. 1:23-CV-282
§
CITY OF PORT ARTHUR, TEXAS and §
FLOZELLE ROBERTS, §
§
       Defendants. §

## MEMORANDUM AND ORDER

Pending before the court is Defendants City of Port Arthur, Texas ("Port Arthur") and Flozelle Roberts's ("Roberts") (collectively "Defendants") Motion to Strike Plaintiffs' Expert Raegan Droddy (#29). Plaintiffs Kirk Thomas ("Thomas") and KT Trucking and Cattle, LLC ("KT Trucking") (collectively "Plaintiffs") filed a Response (#41) in opposition. Defendants filed a Reply (#47). Having considered the pending motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Defendants' motion should be denied.

I.    Background

This lawsuit arises out of the designation of Sassine Avenue as a "no truck route." On October 20, 2020, Thomas filed his Original Petition in the 136th Judicial District Court of Jefferson County, Texas. Approximately two years later, Port Arthur filed a Notice of Removal (#1), removing the action to this court. According to Plaintiffs' Seventh Amended Complaint (#27), Thomas owns property located in Jefferson County, Texas. Thomas engages in various agricultural and commercial pursuits, many of which involve the use of his property. Consequently, commercial vehicles commonly travel to and from Thomas's property. Plaintiffs

assert that the only safe way for a commercial vehicle to access Thomas's property is via Sassine Avenue in Port Arthur, Texas. Port Arthur, however, has designated Sassine Avenue as a "no truck route," which prohibits large commercial vehicles from using Sassine Avenue to enter Thomas's property. Accordingly, Plaintiffs seek a declaratory judgment stating that:

(1) Port Arthur City Ordinances 106-7 and 106-8 do not apply to commercial trucks accessing Thomas's property via Sassine Avenue because Plaintiffs do not qualify as construction companies and do not operate construction vehicles;

(2) Alternatively, if Port Arthur City Ordinances 106-7 and 106-8 do apply, then they are preempted by Port Arthur City Ordinance 106-41(b)(13), meaning:

(a) Sassine Avenue cannot be designated as a "no truck route;" and

(b) Plaintiffs are not required to obtain a permit from Port Arthur to authorize commercial use of Sassine Avenue to enter and exit Thomas's property.

On March 15, 2024, Plaintiffs designated Raegan Droddy ("Droddy") as a testifying expert. Plaintiffs anticipate that Droddy's testimony will demonstrate that Sassine Avenue provides the only means for commercial vehicles to access Thomas's property safely. Droddy is a retired Texas State Trooper with approximately 24 years of experience working for the Texas Department of Public Safety ("DPS").[1] For 13 of his 24 years of experience, Droddy worked in the Commercial Vehicle Enforcement Service. Droddy also served as a crash scene investigator and taught multiple classes on Texas Traffic Laws and Basic Crash Investigations. Droddy currently owns and operates Droddy DOT Safety Consulting, Inc., where he conducts safety

---

[1] Plaintiffs state that Droddy served as a State Trooper for 14 years. Nevertheless, on his resume and in his report, Droddy characterizes his service with the DPS as spanning 24 years.

assessments and audits, provides safety presentations for trucking companies, and reviews company policies, procedures, shipping papers, driver qualifications, and crash paperwork.

On August 16, 2024, Defendants filed a Motion to Strike Plaintiffs' Expert Raegan Droddy (#29). Defendants maintain that Droddy should be struck as an expert because he is not qualified to opine on the matters contained in his report. Alternatively, Defendants assert that Droddy's report is unreliable because it is based on insufficient facts and data. Therefore, Defendants ask this court to strike Droddy as an expert.

II.   Analysis

    A.   Expert Witness Testimony

The admission or exclusion of expert witness testimony is a matter that is left to the discretion of the district court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see Wunstell v. BP, P.L.C.*, No. 23-30859, 2024 WL4100496, at *1 (5th Cir. Sept. 6, 2024); *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297, 2024 WL 863356, at *2 (5th Cir. Feb. 29, 2024); *United States v. Herman*, 997 F.3d 251, 269 (5th Cir. 2021); *Hicks-Fields v. Harris County*, 860 F.3d 803, 810 n.22 (5th Cir. 2017). Pursuant to Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702; *accord Kumho Tire Co.*, 526 U.S. at 152; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Prior to admitting expert testimony, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill,

experience, training, or education.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *accord* FED. R. EVID. 702; *Albert v. City of Petal*, 819 F. App'x 200, 202 (5th Cir. 2020).  Accordingly, "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)); *see United States v. Chisley*, No. 22-40584, 2023 WL 4864811, at *1 (5th Cir. 2023); *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *Henderson v. Atmos Energy*, 496 F. Supp. 3d 1011, 1015 (E.D. La. 2020).

"The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *Robles v. Eminent Med. Ctr.*, 619 F. Supp. 3d 609, 647 (N.D. Tex. 2022) (citing *Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *see Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  The trial court, however, possesses considerable flexibility in assessing the reliability of expert testimony.  *Kumho Tire Co.*, 526 U.S. at 141; *United States v. Schaffer*, 439 F. App'x 344, 346 (5th Cir. 2011) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)); *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010); *Alpizar v. John Christner Trucking, LLC*, 568 F. Supp. 3d 714, 717-18 (W.D. Tex. 2021).

In *Daubert*, the United States Supreme Court articulated a nonexhaustive set of factors that courts may consider when evaluating whether the reasoning or methodology underlying an expert's testimony is reliable:

(1) whether the expert's theory or technique can be or has been tested;

(2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error of the challenged method; and

(4) whether the theory or technique is generally accepted in the relevant scientific community.

509 U.S. at 593-94; *United States v. Arthur*, 51 F.4th 560, 574 (5th Cir. 2022) (quoting *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019)), *cert. denied*, 143 S. Ct. 846 (2023). Given the diverse contexts in which expert testimony is offered, however, the application of specific factors may not be appropriate in any individual case. *Schaffer*, 439 F. App'x at 346; *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006) (citing *Kumho Tire Co.*, 526 U.S. at 147-49). Indeed, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141-42; *accord Hicks*, 389 F.3d at 525. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152; *Certain Underwriters at Lloyds, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 269

(5th Cir. 2020); *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).

The court plays the role of a gatekeeper, determining the admissibility of "all types of expert testimony, not just scientific testimony." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)); *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, 534 F. Supp. 3d 694, 696 (E.D. Tex. 2021). In this role, "trial courts make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (quoting *Daubert*, 509 U.S. at 592-94); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The district court should approach this task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *accord United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 746 (W.D. Tex. 2020).

The trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *14.38 Acres of Land*, 80 F.3d at 1078) Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Whalen v. Monsanto Co.*, No. 24-30105, 2024 WL 4524170, at *7 (5th Cir. Oct. 18, 2024) (quoting *Daubert*, 509 U.S. at 596); *accord Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019); *Dearmond v. Wal-Mart La.*

*LLC*, 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial . . . is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of [the fact finder]."). "The *Daubert* analysis should not supplant trial on the merits." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Pipitone*, 288 F.3d at 250). Thus, "[w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting *Puga*, 922 F.3d at 294).

Defendants advance two contentions to substantiate striking Droddy as an expert under Rule 702 of the Federal Rules of Evidence. First, Defendants claim that Droddy is not qualified to testify as an expert because he does not have the requisite education to support the opinions contained in his report. Second, Defendants maintain that Droddy's opinion is unreliable because it is based on insufficient facts and data. Therefore, Defendants ask this court strike Plaintiffs' expert designation.

    B.    <u>Droddy's Qualifications</u>

Rule 702 of the Federal Rules of Evidence requires a proposed expert to have certain qualifications. FED. R. EVID. 702. Namely, a proposed expert must have specialized knowledge in a particular field or subject by virtue of his "skill, experience, training, or education." *Aircraft Holding Sols., L.L.C. v. Learjet, Inc.*, No. 23-10388, 2024 WL 3042394, at *10 (5th Cir. June 18, 2024); *see United States v. Reginald Anderson*, No. 22-10619, 2025 WL 31413, at *2 (11th Cir. 2025). Rule 702 does not require the expert to be highly qualified in order to testify about an issue. *Aircraft Holding Sols., L.L.C.*, 2024 WL 3042394, at *10. Rather, the Federal Rules

7

of Evidence require only the proponent establish the expert's qualification by a preponderance of the evidence. *Id.*; FED. R. EVID. 702 committee notes on the 2023 amendment.

Defendants contend that Droddy is not qualified to testify as an expert on the subject matter contained in his report because he does not have the requisite experience, education, or knowledge. Defendants assert that Droddy's report contains "numerous engineering opinions regarding the safety and availability of access to Thomas's property." Droddy does not have an engineering degree. Consequently, Defendants claim that Droddy is not qualified to testify on the engineering opinions contained in his expert report. Moreover, Defendants assert that Droddy's experience as a state trooper does not qualify him to opine on whether Sassine Avenue provides a "safer option" for commercial vehicles to access Thomas's property. Defendants also highlight that Droddy admitted in his deposition that he "is not qualified to offer any engineering opinions."[2] Lastly, Defendants emphasize that Droddy has only testified as an expert once prior to the present lawsuit; thereby, further demonstrating his lack of qualifications.[3]

Plaintiffs successfully neutralize Defendants' concerns regarding Droddy's qualifications in one broad-sweeping stroke. Droddy's report does not contain opinions that require him to have an engineering degree. Droddy bases his report on his knowledge and experience that he acquired during 24 years of service with the DPS. Droddy's report focuses on basic measurements, observations, and data. Droddy's report then analyzes those facts under the purview of his specialized knowledge of commercial vehicles, traffic regulations, and highway safety hazards.

---

[2] Droddy's deposition testimony states that he is not qualified to give an engineering opinion. Droddy does not state, however, that he is unqualified to testify regarding matters of traffic safety.

[3] The court rejects the notion that an expert is not qualified simply because he does not have an extensive history of testifying as an expert. *United States v. Lee*, 339 F. App'x 153, 159 (3d Cir. 2009).

Droddy does not attempt to opine on the structural integrity of the road, nor does he attempt to apply complex mathematical formulas beyond his training and expertise. At its core, Droddy's report opines on matters of traffic safety, not matters of engineering. Moreover, an engineering degree is not required to evaluate the safety of certain vehicular maneuvers. Therefore, Droddy may be qualified as an expert despite not having obtained an engineering degree.

Furthermore, Plaintiffs have met their burden of demonstrating, by a preponderance of the evidence, that Droddy is qualified to testify on matters of traffic safety and commercial vehicles. As discussed above, Droddy worked with the DPS for 24 years. Specifically, Droddy worked in the Commercial Vehicle Enforcement Service and acted as a commercial crash scene investigator. Droddy has extensive education regarding commercial vehicles, including his attendance at the Commercial Vehicle Crash Inspection School as recently as 2023. Consequently, in light of Droddy's extensive experience with commercial vehicles, commercial crash scene investigations, and highway law enforcement, the court concludes that Droddy is qualified to testify on matters of traffic safety.

    C.    <u>Droddy's Reliability</u>

As noted above, *Daubert* provides a non-exhaustive list of factors to consider in determining whether an expert's testimony is reliable. *Kim v. Am. Honda Motor Co.*, 86 F.4th 150, 160 (5th Cir. 2023). Defendants, however, do not challenge Droddy's reliability under the *Daubert* factors. Rather, Defendants maintain that Droddy's testimony is unreliable because it is based on insufficient facts and data. An expert's opinion may fail the *Daubert* reliability requirement if it is based on "insufficient, erroneous information." *Johnson v. Cox*, No. 3:21-cv-3105-E, 2023 WL 4686435, at *5 (N.D. Tex. July 21, 2023). Additionally, though an

expert's testimony need not satisfy each and every factor considered under *Daubert*, the requirement that the opinion be based on sufficient facts and data must be satisfied in every instance. *Sullivan v. City of Dallas*, No. 3:21-cv-915-S-BN, 2024 WL 3433932, at *4 (N.D. Tex. July 15, 2024).

Here, Droddy discusses safety issues associated with commercial vehicles utilizing different roads to access Thomas's property. As a result, the court must evaluate whether Droddy's report is predicated on sufficient facts and data. In his report, Droddy relies on his personal observations of Spur 93 and Sassine Avenue, the measurement of a KT Trucking vehicle, the width of the proposed access point on Spur 93, the relevant speed limits and traffic signals, photographs of Thomas's property, online maps, and the Texas Department of Transportation and Safety's most recent average daily traffic count for Spur 93. A review of Droddy's report demonstrates that he methodically gathered facts to form the basis of his opinion. Additionally, Droddy's report outlines the interplay between various facts and states the impact of those interactions on the safety of certain vehicular maneuvers. Accordingly, the analytical gap between the facts Droddy gathered and the conclusions he reached is narrow. Therefore, Plaintiffs have established that Droddy's report is substantiated by sufficient facts and data.

Defendants, however, contend that Droddy's report is unreliable because Droddy admits that he was unsure whether he reviewed a map of Port Arthur's "no truck" routes and that he did not review its zoning ordinances. Defendants also emphasize that Droddy failed to interview anyone besides Thomas when gathering facts and data. Rule 702, however, requires only that an expert's opinions be supported by "sufficient" facts or data. *Hunter Tech. Co. v. Omega Global Techs., Inc.*, No. 20-cv-4858, 2023 WL 3199818, at *14 (N.D. Ill. May 2, 2023) (citing *Lawes*

*v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 101 (1st Cir. 2020)). As a result, the Federal Rules of Evidence do not require an expert to consider *all* relevant facts or data. *Cabrera v. Romano's Macaroni Grill P.R., Inc.*, No. 22-1449 (MEL), 2024 WL 4905665, at *13 (D.P.R. Nov. 27, 2024) ("Rule 702 does not demand that experts rely on all data that could be deemed relevant."). Accordingly, Droddy's lack of consideration of certain documents and sources does not render his opinion unreliable. *Hunter Tech. Co.*, 2023 WL 3199818, at *14 (noting that failure to consider certain facts may create fodder for cross-examination, but it does not render the opinion inadmissible).[4] Therefore, the court concludes that Droddy's report is reliable because it rests on sufficient facts and data.

III.  Conclusion

For the foregoing reasons, Defendants' Motion to Strike Plaintiffs' Expert Raegan Droddy (#29) is DENIED.

SIGNED at Beaumont, Texas, this 31st day of January, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[3] The law surrounding Rule 702 changed in 2023. In this instance, Plaintiffs have demonstrated by a preponderance of the evidence that Droddy's report is based on sufficient facts and data. Having met the requisite burden, failure to consider certain facts becomes a matter of weight and credibility to be decided by the jury. *Cabrera*, 2024 WL 4905665, at *13.