| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

KIRK THOMAS and KT TRUCKING §
AND CATTLE LLC, §
 §
      Plaintiffs, §
 §
*versus* §   CIVIL ACTION NO. 1:23-CV-282
 §
CITY OF PORT ARTHUR, TEXAS, and §
FLOZELLE ROBERTS, §
 §
      Defendants. §

## MEMORANDUM AND ORDER

Pending before the court is Plaintiffs Kirk Thomas ("Thomas") and KT Trucking and Cattle, LLC's ("KT Trucking") (collectively "Plaintiffs") Motion to Exclude and/or Limit the Testimony of Defendants' Expert John McInturff (#28). Plaintiffs subsequently filed an Amended Motion to Exclude and/or Limit the Testimony of Defendants' Expert John McInturff (#31), wherein they attached exhibits that were omitted from the original filing. Defendants City of Port Arthur, Texas ("Port Arthur"), and Flozelle Roberts ("Roberts") (collectively "Defendants") filed a Response (#35) to the Amended Motion. Having considered the pending motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Plaintiffs' original Motion to Exclude (#28) is moot and its Amended Motion (#31) should be denied.

I.    Background

This lawsuit arises out of Port Arthur's designation of Sassine Avenue as a "no truck route." On October 20, 2020, Thomas filed his Original Petition in the 136th Judicial District Court of Jefferson County, Texas. Approximately two years later, Port Arthur filed a Notice of

Removal (#1), removing the action to this court. According to Plaintiffs' Seventh Amended Complaint (#27), Thomas owns property located in Jefferson County, Texas. Thomas engages in various agricultural and commercial pursuits on his property, including a land farming operation and the management of his personal trucking business. Consequently, Thomas's endeavors often require large commercial vehicles to enter and exit his property. Plaintiffs assert that the only safe way for a commercial vehicle to access Thomas's property is via Sassine Avenue in Port Arthur, Texas. Port Arthur, however, has designated Sassine Avenue as a "no truck route," which prohibits large commercial vehicles from using Sassine Avenue. Accordingly, Plaintiffs seek a declaratory judgment stating that:

(1) Port Arthur City Ordinances 106-7 and 106-8 do not apply to commercial trucks accessing Thomas's property via Sassine Avenue because Plaintiffs do not qualify as construction companies and do not operate construction vehicles;

(2) Alternatively, if Port Arthur City Ordinances 106-7 and 106-8 do apply, then they are preempted by Port Arthur City Ordinance 106-41(b)(13), meaning:

   (a) Sassine Avenue cannot be designated as a "no truck route;" and

   (b) Plaintiffs are not required to obtain a permit from Port Arthur to authorize commercial use of Sassine Avenue to enter and exit Thomas's property.

On May 20, 2024, Defendants designated John McInturff ("McInturff") as a testifying expert. Defendants anticipate that McInturff's testimony will demonstrate, among other things, that Thomas's use of Sassine Avenue does not constitute routine commerce. McInturff is a civil engineer licensed in Louisiana and Texas. McInturff graduated from Texas A&M University with a Bachelor of Science in Civil Engineering in 1973. A year later, McInturff graduated with a Master of Engineering from the same institution. McInturff has spent the majority of his career,

approximately 50 years, working specifically in highway, traffic, and transportation engineering. Currently, McInturff is a Principal Engineer at Kittelson, LLC, in College Station, Texas. McInturff has held his present position since 2017.

On August 16, 2024, Plaintiffs filed an Amended Motion to Exclude and/or Limit Testimony of Defendants' Expert John McInturff (#31). Plaintiffs maintain that McInturff's testimony should be excluded or, at a minimum, limited because "McInturff's opinion . . . lacks foundation, is wholly speculative, and is the mere Ipse Dixit of the expert." Plaintiffs also assert that "the analytical gap between the facts and McInturff's opinion on whether hauling drilling mud is routine commerce is vast." Accordingly, Plaintiffs ask this court to exclude or, in the alternative, limit McInturff's testimony with respect to his opinions on routine commerce.

II.   Analysis

    A.   Expert Witness Testimony

The admission or exclusion of expert witness testimony is a matter that is left to the discretion of the district court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see Wunstell v. BP, P.L.C.*, No. 23-30859, 2024 WL4100496, at *1 (5th Cir. Sept. 6, 2024); *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297, 2024 WL 863356, at *2 (5th Cir. Feb. 29, 2024); *United States v. Herman*, 997 F.3d 251, 269 (5th Cir. 2021); *Hicks-Fields v. Harris County*, 860 F.3d 803, 810 n.22 (5th Cir. 2017). Pursuant to Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702; *accord Kumho Tire Co.*, 526 U.S. at 152; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Prior to admitting expert testimony, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *accord* FED. R. EVID. 702; *Albert v. City of Petal*, 819 F. App'x 200, 202 (5th Cir. 2020). Accordingly, "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)); *see United States v. Chisley*, No. 22-40584, 2023 WL 4864811, at *1 (5th Cir. 2023); *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *Henderson v. Atmos Energy*, 496 F. Supp. 3d 1011, 1015 (E.D. La. 2020).

"The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *Robles v. Eminent Med. Ctr.*, 619 F. Supp. 3d 609, 647 (N.D. Tex. 2022) (citing *Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *see Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998))). The trial court, however, possesses considerable flexibility in assessing the reliability of expert testimony. *Kumho Tire Co.*, 526 U.S. at 141; *United States v. Schaffer*, 439 F. App'x 344, 346 (5th Cir. 2011) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)); *United States v. Valencia*, 600 F.3d 389, 424

(5th Cir. 2010); *Alpizar v. John Christner Trucking, LLC*, 568 F. Supp. 3d 714, 717-18 (W.D. Tex. 2021).

In *Daubert*, the United States Supreme Court articulated a nonexhaustive set of factors that courts may consider when evaluating whether the reasoning or methodology underlying an expert's testimony is reliable:

(1) whether the expert's theory or technique can be or has been tested;

(2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error of the challenged method; and

(4) whether the theory or technique is generally accepted in the relevant scientific community.

509 U.S. at 593-94; *United States v. Arthur*, 51 F.4th 560, 574 (5th Cir. 2022) (quoting *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019)), *cert. denied*, 143 S. Ct. 846 (2023). Because of the diverse contexts in which expert testimony may be offered, however, the application of specific factors might not be appropriate in any individual case. *Schaffer*, 439 F. App'x at 346; *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006) (citing *Kumho Tire Co.*, 526 U.S. at 147-49). Indeed, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141-42; *accord Hicks*, 389 F.3d at 525. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*

*Tire Co.*, 526 U.S. at 152; *Certain Underwriters at Lloyds*, *London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 269 (5th Cir. 2020); *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).

The court plays the role of a gatekeeper, determining the admissibility of "all types of expert testimony, not just scientific testimony." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)); *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, 534 F. Supp. 3d 694, 696 (E.D. Tex. 2021). In this role, "trial courts make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (quoting *Daubert*, 509 U.S. at 592-94); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The district court should approach this task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *accord United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 746 (W.D. Tex. 2020).

The trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *14.38 Acres of Land*, 80 F.3d at 1078). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Whalen v. Monsanto Co.*, No. 24-30105, 2024 WL 4524170, at *7 (5th Cir. Oct. 18, 2024) (quoting *Daubert*, 509 U.S. at

596); *accord Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019); *Dearmond v. Wal-Mart La. LLC*, 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial . . . is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of [the fact finder]."). "The *Daubert* analysis should not supplant trial on the merits." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Pipitone*, 288 F.3d at 250). Thus, "[w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting *Puga*, 922 F.3d at 294).

Plaintiffs style their objections to McInturff's testimony as two distinct claims. First, Plaintiffs assert that McInturff's testimony should be excluded because it is so speculative that it constitutes the *ipse dixit* of the expert. Second, Plaintiffs maintain that McInturff's testimony should be excluded because there exists a large analytical gap between the facts he relies upon and his opinion. Plaintiffs' allegations, however, merely present two sides of the same coin. Nevertheless, a distilled review of Plaintiffs' Amended Motion reveals Plaintiffs' core contention—McInturff's opinions are unreliable because they are based on insufficient facts and data.[1]

B. <u>McInturff's Reliability</u>

As noted above, *Daubert* provides a non-exhaustive list of factors to consider in determining whether an expert's testimony is reliable. *Kim v. Am. Honda Motor Co.*, 86 F.4th

---

[1] There are multiple facets to analyzing an expert's reliability. Here, however, Plaintiffs challenge only one aspect of McInturff's reliability. Plaintiffs' assertions that McInturff's opinions are unfounded, *ipse dixit*, and analytically remote all bear on the same question—whether his opinions are based on sufficient facts and data. *See Dunn v. State Farm Fire & Cas. Co.*, No. 2:23-cv-72-KS-MTP, 2024 WL 2835314, at *7 (S.D. Miss. June 4, 2024) (addressing an expert's reliance on his own *ipse dixit* and the existence of a large analytical gap interchangeably).

150, 160 (5th Cir. 2023). Plaintiffs, however, do not challenge McInturff's reliability under the *Daubert* factors. Rather, Plaintiffs maintain that McInturff's testimony is unreliable because it is based on insufficient facts and data. An expert's opinion may fail the *Daubert* reliability requirement if it is based on "insufficient, erroneous information." *Johnson v. Cox*, No. 3:21-cv-3105-E, 2023 WL 4686435, at *5 (N.D. Tex. July 21, 2023). Moreover, a court may exclude an expert's testimony as unreliable if there is "too great an analytical gap between the [basis for the expert opinion] and the opinion proffered." *Id*. Consequently, a court "need not admit testimony that is connected to existing data only by the ipse dixit . . . of the expert." *Sullivan v. City of Dallas*, No. 3:21-cv-915-S-BN, 2024 WL 3433932, at *3 (N.D. Tex. July 15, 2024). An expert's opinion relies on *ipse dixit* when the opinion advances unproven and unsupported assertions that rest solely on the expert's authority. *Id*. Though an expert's testimony need not satisfy each and every factor considered under *Daubert*, the requirement that the opinion be based on sufficient facts and data must be satisfied in every instance. *Sullivan*, 2024 WL 3433932, at *4.

In the present case, Plaintiffs challenge McInturff's conclusion regarding what constitutes "routine commerce" under Port Arthur Ordinance 106-41(b)(13). The relevant ordinance states that Port Arthur cannot prohibit a commercial vehicle from using a street for "the purpose of going directly to or from any residential, commercial or industrial establishment abutting on such street for purposes of routine commerce." Port Arthur, Tex., Code § 106-41(b)(13) (2024). Regarding what constitutes "routine commerce," McInturff's report states:

> Trucks traveling to/from the Thomas property are not using Sassine Avenue for routine commerce such as trips for pickup or deliver of goods or services; i.e., delivery of a refrigerator purchased by a homeowner for delivery to their residence, FedEx/UPS deliveries, etc. Instead, the evidence provided to me

>suggests that the trucks are engaged in non-routine heavy hauling in connection with the disposal of drilling mud from discrete construction projects. The evidence further shows that these hauling activities included twenty-four hour operations involving repeated trips up and down Sassine Avenue from FM 365, which for purposes of traffic design and engineering, is also not routine commerce to be expected on a residential street like Sassine Avenue.

Plaintiffs advance two contentions in support of the exclusion of McInturff's testimony. First, Plaintiffs assert that McInturff fails to link his opinion regarding the characterization of Thomas's use of Sassine Avenue to his knowledge and expertise as a civil engineer. Stated another way, Plaintiffs maintain that there exists an unacceptably large gap between McInturff's expertise and the opinion rendered in his report. Second, Plaintiffs contend that McInturff's report relies on erroneous and unsupported facts. Thus, Plaintiffs ask the court to exclude McInturff's testimony.

Plaintiffs first contention falls flat as Defendants have set forth sufficient facts and data to bridge the alleged analytical gap between McInturff's opinion and his expertise. In his report, McInturff evaluates the use of Sassine Avenue from the perspective of a traffic design and engineering expert. McInturff notes that Sassine Avenue is a residential street, which is primarily used for accessing residential properties. Due to the area's residential nature, McInturff opines that the routine commerce on Sassine Avenue is commerce that provides residential goods and services to that neighborhood. From a traffic design perspective, McInturff's report evaluates what constitutes "routine commerce" based on the type of street at issue, the surrounding area, and the type of commerce that street would be expected to withstand. Additionally, McInturff provides examples, stating that routine commerce on Sassine Avenue could include use of the road by package delivery services, such as FedEx or UPS. Moreover, McInturff explains that Sassine Avenue, as a residential road, was not designed to withstand repeated and long-term use by large

commercial vehicles like the ones used in Thomas's commercial endeavors. Thus, McInturff concludes that Sassine Avenue's residential design combined with its unsuitability for use by large commercial vehicles demonstrates that Thomas's commercial activity does not constitute routine commerce.

As noted above, Plaintiffs further maintain that McInturff based his opinion on erroneous facts and data. Specifically, Plaintiffs assert that McInturff does not base his opinion on "any information . . . other than his belief that the drilling mud is coming from discrete construction projects that sometimes include twenty-four-hour operations and involve repeated trips." Plaintiffs then elaborate that there is no evidence that the drilling mud Thomas uses in his land farming operation comes from "discrete construction projects." Rather, Plaintiffs maintain that the drilling mud results from laying pipelines and drilling for oil, practices that Plaintiffs contend are routine in Southeast Texas. Plaintiffs also contend that the repetitious nature of the trips further demonstrates the routine character of Thomas's commercial activity.

Plaintiffs' assertions, however, ring hollow. First, the source of the drilling mud is inconsequential to McInturff's opinion.[2] Regardless of the mud's origin, the parties agree that Thomas commonly permits companies to dispose of drilling mud on his property as part of his land farming operation. The parties also agree that large commercial vehicles are needed to haul drilling mud. In his report, McInturff does not highlight Plaintiffs' hauling practices to establish that the mud resulted from discrete construction projects. Rather, McInturff discusses Thomas's

---

[2] The court notes that the issue of whether the mud originated from a construction project is of consequence in the case due to the prohibitions contained in Port Arthur Ordinance 106-8. The issue, however, is not of consequence in the present motion because the source of the drilling mud does not impact the validity of McInturff's expert evaluation of whether Thomas's proposed use constitutes routine commerce.

hauling practices to emphasize the inconsistency between Thomas's use of Sassine Avenue and the common commercial activity in that area. Additionally, the mere fact that McInturff's conclusion as to what constitutes "routine commerce" differs from that of Plaintiffs does not render his opinion unreliable or mean that it is based on erroneous facts or data. McInturff's opinion that Thomas's proposed use does not constitute "routine commerce" is based on his knowledge of traffic engineering and design. Consequently, the court cannot conclude that McInturff's opinions are unreliable.

McInturff's report reflects a thorough and methodical evaluation of the present case from the perspective of a civil engineer. McInturff explains why, based on his knowledge of traffic design and roadway engineering, he determined that Thomas's proposed use of Sassine Avenue does not constitute routine commerce. McInturff relies on the design of the road, its residential designation, the relevant zoning ordinances, the residential nature of the surrounding area, and his knowledge of the germane traffic patterns and signals. Consequently, McInturff's challenged testimony and his underlying opinion rely on the facts of the present case, the data provided, and his own expertise. Hence, there is no viable basis for excluding him as an expert witness or limiting his testimony in the present case.

III.   Conclusion

For the foregoing reasons, Plaintiffs' Amended Motion to Exclude and/or Limit the Testimony of Defendant's Expert John McInturff (#31) is DENIED. Additionally, Plaintiffs' Motion to Exclude Expert Testimony (#28) is DENIED as moot.

SIGNED at Beaumont, Texas, this 12th day of February, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE